**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE (WILMINGTON)**

ROBERT H. AYLOR, JR., On Behalf of Himself and All Others Similarly Situated,

Plaintiff,

vs.

XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., and THOMAS D. DAVIS,

Defendants.

Case No. 1:05-cv-00222 (SLR)

**[Caption continues on next page]**

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE JAMES GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Seth D. Rigrodsky (#3147)
Ralph N. Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware 19801
Telephone: (302) 984-0597
--and--
**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Steven G. Schulman
David P. Brower
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
Telephone: (212) 594-5300

**HOLMAN LAW OFFICE**
Thomas A. Holman
One Pennsylvania Plaza — Suite 4632
New York, N.Y. 10119
Telephone: (212) 699-4596

***Plaintiff's Counsel***

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
Tzivia Brody
6 East 45th Street
New York, New York 10017
Telephone: (212) 687-7230

***Proposed Lead Counsel***

Dated: June 14, 2005

| | |
|---|---|
| MOSHE TAL, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., and THOMAS D. DAVIS,<br><br>Defendants. | Case No. 1:05-cv-00242 (SLR) |
| MICHAEL FEHRENBACHER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, M.D. STEVEN A. NEWMAN and THOMAS D. DAVIS,<br><br>Defendants. | Case No. 1:05-cv-00256 (SLR) |
| JEFFREY M. JASKOL and STACEY J. JASKOL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., and THOMAS D. DAVIS,<br><br>Defendants. | Case No. 1:05-cv-00268 (SLR) |

**Caption continues on next page]**

| | |
|---|---|
| JOSEPH DANIEL WAUHOP, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., THOMAS D. DAVIS, JOHN F. MOYNAHAN and GRANT THORNTON LLP,<br><br>Defendants. | Case No. 1:05-cv-00310 (SLR) |
| [CHRISTINA W. DONNELLY, JOHN DONNELLY, JAMES G. WILLIAMSON and RICHARD W. DEARBORN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, THOMAS D. DAVIS and BRUCE C. HAYDEN,<br><br>Defendants. | Case No. 1:05-cv-00334 (JJF) |
| CHARLES W. SMITH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, THOMAS D. DAVIS, BRUCE C. HAYDEN and GRANT THORNTON LLP,<br><br>Defendants. | Case No. 1:05-cv-00354 (SLR) |

## TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ....................1

INTRODUCTION ....................1

SUMMARY OF FACTS ....................3

ARGUMENT

POINT I
THE ACTIONS SHOULD BE CONSOLIDATED ....................6

POINT II
THE JAMES GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ....................7

A. The Procedure Required By The PSLRA ....................7

B. The James Group Satisfies The "Lead Plaintiff" Requirements Of The Exchange Act And Should Be Appointed Lead Plaintiff....................8

1. The James Group Has Timely Moved for Appointment as Lead Plaintiff....................8

2. The James Group Has The Requisite Financial Interest In The Relief Sought By The Class....................9

3. The James Group Otherwise Satisfies Rule 23....................9

POINT III
THE JAMES GROUP'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ....................11

CONCLUSION....................12

## TABLE OF AUTHORITIES

### CASES

**Page**

*Bell v. Ascendant Solutions, Inc.*,
No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17, 2002)....................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................8, 9

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)....................6

*Fields v. Biomatrix, Inc.*,
198 F.R.D. 451 (D.N.J. 2000)....................9, 10, 11

*Fischler v. Amsouth Bancorporation*,
No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997)....................10

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996)....................7

*Lax v. First Merchs. Acceptance Corp.*,
No. 97C2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)....................2, 7, 10

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000)....................2

*In re Oxford Health Plans*,
182 F.R.D. 42 (S.D.N.Y. July 15, 1998)....................10

*Priest v. Zayre Corp.*,
118 F.R.D. 552 (D. Mass. 1988)....................10

### DOCKETED CASES

*Fehrenbacher v. Xybernaut Corp.*,
No. 05-CV-256 (D. Del filed May 2, 2005)....................1

*Heilman v. Xybernaut Corp.*,
No. 05-CV-0525 (E.D. Va. filed May 9, 2005)

*Zuccarelli v. Xybernaut Corp.*,
No. 05- CV-0610 (E.D. Va. filed June 2, 2005)....................1

*Jaskol v. Xybernaut Corp.*,
No. 05-CV-268 (D. Del. filed May 4, 2005)....................3

*Lawthers v. Xybernaut Corp.*,
No. 05-CV-0617 (E.D. Va. filed June 3, 3005) .......... 1

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 .......... 2, 8

Fed. R. Civ. P. 42(a) .......... 2, 6

17 C.F.R. § 240.10b-5 .......... 1

15 U.S.C. § 78u-4 .......... *passim*

15 U.S.C. §§ 78j(b) .......... 1

## PRELIMINARY STATEMENT

Class members Kenneth James, La Rocca Pietro, Michael A. Farmakis, David S. Pennington, and Christina Donnelly (collectively, the "James Group" or "Movant") respectfully submits this Memorandum of Law in support of their motion for: (1) consolidation of the above-captioned actions; (2) appointment as Lead Plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, and (3) approval of their selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Stull, Stull & Brody as Lead Counsel, pursuant to the PSLRA.

## INTRODUCTION

Presently pending in this District are seven class action lawsuit (the "Action")[1] on behalf of all persons who purchased or otherwise acquired the securities of Xybernaut Corporation ("Xybernaut") between May 10, 2002 and April 8, 2005 (the "Class Period"). This Action is brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants are Xybernaut and certain of Xybernaut's officers and directors.[2]

---

[1] The James Group is aware of at least three related securities class actions pending in the Eastern District of Virginia captioned *Heilman v. Xybernaut Corp.*, No. 05-CV-0525 (E.D. Va. filed May 9, 2005), *Zuccarelli v. Xybernaut Corp.*, No. 05-CV-0610 (E.D. Va. filed June 2, 2005), and *Lawthers v. Xybernaut Corp.*, No. 05-CV-0617 (E.D. Va. filed June 3, 2005) (collectively, the "Virginia Actions"). Plaintiffs in the Virginia Actions have filed a motion to transfer related actions to the Eastern District of Virginia and for consolidated or coordinated proceedings before the Judicial Panel on Multidistrict Litigation (the "Transfer Motion"). The James Group will fully respond to the Transfer Motion in due course. In an abundance caution, in the event the Transfer Motion is granted, the James Group has simultaneously filed its lead plaintiff motion in the Virginia Actions.

[2] The above-captioned actions allege differing class periods. Specifically, the complaint filed in *Fehrenbacher v. Xybernaut Corp.*, No. 05-CV-256 (D. Del. filed May 2, 2005), alleges a class period of March 27, 2003 to April 19, 2005. All other actions allege a Class Period of May 10, 2002 to April 8, 2005. For the purpose of this motion, the James Group has used the longer

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court is to appoint as Lead Plaintiff the movant or group of movants with the largest financial interest in the litigation of those seeking such appointment and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

The Actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a) (consolidation is appropriate where there is a common issue of law or fact). Each action names Xybernaut Corporation as a defendant, names overlapping individual defendants, and alleges the same or similar class period. Moreover, the Actions allege essentially the same wrongdoing, namely, that Xybernaut failed to disclose that the Company's purported success was the result of, in material part, improper accounting, made possible by a serious breakdown in the Company's internal controls.

Pursuant to the PSLRA, after consolidating related actions, the Court should appoint as Lead Plaintiff the movant or group of movants which have demonstrated the "largest financial interest in the litigation" that also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). As demonstrated herein, Movants, with a combined financial interest of $427,006.37, have, to the best of their or their counsel's knowledge, the largest financial interest in this litigation of any plaintiff or lead plaintiff movant, are typical of the class

---

of the class periods, that is, May 10, 2002 to April 8, 2005, to demonstrate that it will most adequately represent the entire class of purchasers of Xybernaut securities that was affected by defendants' materially false and misleading statements and/or omissions. Such differences will not affect consolidation of the related actions if or when the actions are transferred to one district, as this issue can be resolved when the appointed lead plaintiff files a consolidated complaint. *See, e.g., In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431-32 (E.D. Va. 2000) (consolidating actions alleging different class periods and naming different defendants); *Lax v. First Merchs. Acceptance Corp.*, No. 97C2715, 1997 U.S. Dist. LEXIS 11866, at *4 (N.D. Ill. Aug. 6, 1997) (same).

they seek to represent and will more than adequately protect the interest of class members. *See id.*

Pursuant to the PSLRA, the Lead Plaintiff selects the Lead Counsel subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have selected the law firms of Milberg Weiss and Stull, Stull & Brody to serve as Lead Counsel. Milberg Weiss and Stull, Stull & Brody have extensive experience successfully litigating securities class actions and possess the resources necessary to vigorously pursue this litigation on behalf of the class. For the reasons summarized herein and discussed more fully below, Movants' motion should be approved in its entirety.

## SUMMARY OF FACTS[3]

During the Class Period, Xybernaut, a Delaware company engaged in the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems, and software and service solutions, reported positive results which the Company attributed to, among other things, the sale of its handheld and wearable computer devices, including its flagship product, Atigo ® wireless displays, as well as cost-cutting programs, financings, intellectual property licensing strategies, strategic partnerships and securing key accounts in the transportation, retail, military and homeland security sectors. Unbeknownst to the Class, these statements were materially false and misleading because defendants failed to disclose that the Company's purported success was the result of, in material part, improper accounting, made possible by a serious breakdown in the Company's internal controls.

[3] These facts are derived from the allegations in the complaint captioned *Jaskol v. Xybernaut Corp.*, No. 05-CV-268 (D. Del. filed May 4, 2005) (the "*Jaskol* Action").

The truth began to emerge on February 17, 2005. On that day, after weeks of decline in the price of Xybernaut stock, the Company issued a press release stating "that it knows of no business reason or financial condition that would explain the decline in its stock price." In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per share, up $0.07 from its closing price on February 16, 2005.

On March 14, 2005, Xybernaut issued a press release announcing that it would be unable to file its 2004 annual report on time. The Company stated that it expected to file its annual report by March 31, 2005.

On March 31, 2005 defendants issued a press release revealing that it had discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks. The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters, and, as a result, could not predict when it would be able to file its 2004 annual report. In addition, the Company revealed for the first time that, on February 1, 2005, ***nearly two months earlier***, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder. Xybernaut also announced that it had received notification from Nasdaq that the Company's stock, which had been trading below $1.00 per share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

On April 8, 2005, the last day of the Class Period, defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the Company's historical financial statements for fiscal 2002 and 2003; and the Company's financial statements for the interim first, second, and third quarters of 2002 and 2003. In reaction to this news, the price of

Xybernaut stock, which had already fallen $0.53 per share since the Company's March 14, 2005 announcement that it would not be able to timely file its annual report, fell another $0.06 to close at $0.13 on the next trading day, April 11, 2005.

On April 19, 2005, after the market had closed, the Company announced the completion of its internal investigation. Despite the report's lack of specificity, it made clear that the Company's management had engaged in serious undisclosed wrongdoing that had had a material impact on the Company's financial condition and performance, and which rendered all statements by defendants suspect:

> 1. The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed to properly substantiate expenses charged to the Company.
>
> 2. Newman's family members were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.
>
> 3. The employment of Newman's family members had not been disclosed in SEC filings as required by SEC disclosure regulations.
>
> 4. The Company had failed to adhere to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.
>
> 5. Senior Management had entered into major transactions in violation of Company internal controls and concealed material financial conditions of the transactions to the Board.
>
> 6. Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and
>
> 7. Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

The Company stated that it had removed, or had requested the resignation of, the officers and directors identified above. Moreover, the Company stated that Grant & Thornton had resigned as auditor because "in its professional judgment, it can no longer rely on management's

representations." The Company repeated its warnings that "no reliance should be placed upon certain of the Company's historical financial statements, together with the related audit reports the Company received from its outside auditors."

On April 25, 2005, Xybernaut announced that the United States Attorneys Office for the Eastern District of Virginia had commenced an investigation of the Company relating to the wrongdoing discovered in the Company's internal investigation. In addition, Xybernaut stated that "it continues to face a severe liquidity crisis and possible insolvency" and that there "can be no assurances that the Company will have sufficient cash to meet its financial obligations or fund continuing operations."

## ARGUMENT

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED

Consolidation is appropriate where there are actions involving common questions of law *or* fact. Fed. R. Civ. P. 42 (a) (emphasis added). Each of the Actions asserts class claims on behalf of the purchasers and acquirers of Xybernaut securities for alleged violations of the Exchange Act during the Class Period. All of the Actions name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased and/or acquired Xybernaut securities at artificially inflated prices as a result of defendants' alleged false and misleading statements and whether defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact and consolidation would undoubtedly promote efficiency in the litigation and management of this complex matter. *See id.; see also In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 438 (S.D. Tex. 2002) ("[C]onsolidation, at least pretrial, serves to promote an orderly progression of this very

complex litigation, especially since discovery necessarily involves overlapping Defendants and a common core of facts and legal issues. . .")

**POINT II**

**THE JAMES GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

**A. The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). Here, the relevant notice was published on *PR Newswire* on April 15, 2005.[4] Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[4] A copy of this notice is annexed as Exhibit A to the Declaration of Ralph Sianni ("Sianni Decl."). *PR Newswire* has been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire services." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). As discussed below, the James Group has complied with the procedural prerequisites of the PSLRA, has demonstrated what, to the best of its knowledge, is the largest financial interest in the litigation and meets the relevant requirements of Fed. R. Civ. P. 23, and should be appointed as the Lead Plaintiff.

**B. The James Group Satisfies The "Lead Plaintiff" Requirements Of The Exchange Act And Should Be Appointed Lead Plaintiff**

**1. The James Group Has Timely Moved for Appointment as Lead Plaintiff**

All class members who are interested in moving for the appointment of Lead Plaintiff in this matter must do so by June 14, 2005. 15 U.S.C. § 78u-4(a)(3)(A) and (B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, (*i.e.*, within 60 days after the notice published on April 15, 2005), the James Group hereby move this Court in a timely manner to be appointed Lead Plaintiff on behalf of all members of the Class.

Movants have each signed and filed a certification stating that they have reviewed the allegations of a complaint and are willing to serve as a representative party on behalf of the Class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Sianni Decl. Exhibit B. In addition, Movants have selected and retained competent counsel to represent them and the Class. *See* Sianni Decl.

Exhibits D and E (Firm Resumes of Milberg Weiss and Stull, Stull & Brody, respectively). Accordingly, Movants have satisfied the procedural requirements of 15 U.S.C. § 78u-4(a)(3)(B).

**2. The James Group Has The Requisite Financial Interest In The Relief Sought By The Class**

Pursuant to the PSLRA, identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig*. 264 F.3d at 262 *quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). During the Class Period, as evidenced by the certification signed by each member of the James Group (*see* Sianni Decl., Exh. B) and analysis of its transactions in Xybernaut securities (*see* Sianni Decl. Exhibit C), the James Group has sustained total losses of $427,006.37. Upon information and belief, the James Group's financial interest in this matter is the largest of any competing lead plaintiff movant. Therefore, the James Group is the movant with the "largest financial interest in the relief sought by the class" 15 U.S.C. § 78u-4(a)(3)(B)(iii). *See Fields v. Biomatrix, Inc*., 198 F.R.D. 451, 456 (D.N.J. 2000) (appointing movant with the largest financial interest as lead plaintiff.).

**3. The James Group Otherwise Satisfies Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See also In re Cendant Corp. Litig*. 264 F.3d at 262. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two — typicality and adequacy —directly address the personal

characteristics of the lead plaintiff movants. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See Fields,* 198 F.R.D. at 455 ("[O]f the four prerequisites to class certification, the focus is only on the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements."); *Lax v. First Merchants*, 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997).

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Fields* 198 F.R.D. at 456-457 ("The typicality requirement is construed liberally as long as there is no express conflict between the class representative and the class."); *In re Oxford Health Plans,* 182 F.R.D. 42, 50 (S.D.N.Y. July 15, 1998). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between its claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).

The James Group satisfies the typicality requirement of Rule 23 because, just like all other class members, its members: (1) transacted in Xybernaut securities during the Class Period at distorted prices; and (2) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. *See Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S.

Dist. LEXIS 6850 at *18 (N.D. Tex. Apr. 17, 2002) ("The Court is aware of no differences among the class members that would substantially alter the proof required for one member's claims versus another's. Thus . . .the claims of the [movants] are typical of those of the purported class members.").

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." Pursuant to the PSLRA, a movant is adequate if: (1) the movant is qualified, experienced, and generally able to conduct the proposed litigation; and (2) the movant does not have interests antagonistic to those of the class. *Fields* 198 F.R.D. at 457 *citing Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975).

Movants will more than adequately represent the interests of the Class. First, there is no conflict between the interests of Movants and those of the other members of the Class. Finally, as demonstrated below, Movants' proposed Lead Counsel, Milberg Weiss and Stull, Stull & Brody are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion and should be appointed as Lead Plaintiff.

**POINT III**

**THE JAMES GROUP'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, the James Group, as the presumptively most adequate plaintiff, has selected Milberg Weiss and Stull, Stull & Brody to serve as Lead Counsel, subject to this Court's approval. Milberg Weiss possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Sianni Decl. Exhibit D. As is demonstrated in its firm resume, Milberg Weiss has been appointed as lead or co-lead

counsel in landmark, precedent setting class actions. *See id.* Similarly, Stull, Stull & Brody has extensive experience in prosecuting securities class actions, and has successfully recovered millions of dollars in settlements on behalf of aggrieved shareholders. *See* Sianni Decl. Exhibit E. Accordingly, the James Group's selection of Lead Counsel should be approved.

## CONCLUSION

For the foregoing reasons, the James Group satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). The James Group respectfully requests that this Court: (1) consolidate the actions; (2) appoint it as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve its selection of Milberg Weiss and Stull, Stull & Brody as Lead Counsel.

DATED: June 14, 2005

Respectfully submitted,

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

By: /s/ Ralph N. Sianni
Seth D. Rigrodsky (#3147)
Ralph N. Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware 19801
Tel.: (302) 984-0597

--and--

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Steven G. Schulman
David P. Brower
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
Tel.: (212) 594-5300

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
Tzivia Brody
6 East 45th Street
New York, New York 10017
Tel.: (212) 687-7230
Fax.: (212) 490-2022

***Proposed Lead Counsel***

**HOLMAN LAW OFFICE**
Thomas A. Holman
One Pennsylvania Plaza — Suite 4632
New York, N.Y. 10119
Tel.: (212) 699-4596
Fax.: (212) 947-9967

***Plaintiff's Counsel***